TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00417-CR







David Alexander Bailey, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT


NO. 7877, HONORABLE JOE CARROLL, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



Appellant David Alexander Bailey pleaded no contest to possessing more than
400 grams of methamphetamine with intent to deliver. See Tex. Health & Safety Code Ann.
§ 481.112(a), (f) (West Supp. 2009). The trial court adjudged him guilty and, pursuant to a plea
bargain, imposed a thirty-five-year prison sentence. Appellant brings forward nine issues by which
he contends that the trial court erred by overruling his pretrial motions to quash the indictment and
to suppress evidence, the evidence is insufficient to support the conviction, and the written judgment
of conviction does not conform to the court's oral pronouncement of sentence. We will modify the
judgment and affirm it as modified.





INDICTMENT AND EVIDENCE SUFFICIENCY


The indictment contained two counts. Count one alleged that appellant "knowingly
manufacture[d], by production, preparation, compounding, conversion, or processing, directly or
indirectly by extraction from substance of natural origin, independently by means of chemical
synthesis, or by a combination of extraction and chemical synthesis, a controlled substance, namely,
Methamphetamine, in an amount of 400 grams or more." See id. § 481.002(25) (defining
"manufacture"). Appellant moved to quash this count, urging that the State was required to specify
whether he had manufactured the methamphetamine by production, preparation, compounding,
conversion, or processing. The motion also argued that the State was required to specify whether
the manufacturing was done by extraction, chemical synthesis, or a combination of the two. We
need not decide whether the trial court erred by overruling the motion because the State subsequently
dismissed count one, effectively giving appellant the relief he sought. Issue nine is overruled.

Appellant was convicted on count two of the indictment, which alleged that he
"knowingly possess[ed], with intent to deliver, a controlled substance, namely Methamphetamine,
in an amount of 400 grams or more." Appellant moved to quash this count on the ground that it
failed to allege the penalty group, and he now asserts that the trial court erred by overruling
the motion.

Appellant argues that the penalty group must be alleged and proved because the
various controlled substance manufacturing, delivery, and possession offenses are defined according
to the penalty group in which the substance appears. See id. §§ 481.112-118. Appellant reasons that
because a person cannot be prosecuted for manufacturing, delivering, or possessing a substance that
is not listed in a penalty group, the penalty group must be alleged in the indictment. Although we
agree with appellant's premise, we do not agree with his conclusion. Count two of the indictment
alleged that appellant possessed methamphetamine with intent to deliver. Methamphetamine is
listed in penalty group one. See id. § 481.102(6). The indictment gave adequate notice to appellant
of the offense he was accused of committing. See Bailey v. State, 543 S.W.2d 653, 655 (Tex. Crim.
App. 1976).

Alternatively, appellant contends that it was necessary to allege the penalty group
because methamphetamine is also listed in penalty group three, as an isomer of phentermine. See
Tex. Health & Safety Code Ann. § 481.104(a)(7) (West Supp. 2009). Accepting as true appellant's
assertion that methamphetamine is an isomer of phentermine, methamphetamine nevertheless is not
included in penalty group three because it is specifically listed in penalty group one. See id. ("unless
listed in another penalty group"). Appellant also points out that methamphetamine is listed as a
schedule II stimulant. See id. § 481.032. This is irrelevant because the criminal penalties for
manufacturing, delivering, or possessing a schedule substance apply only if the substance is not
listed in a penalty group. See Tex. Health & Safety Code Ann. § 481.119 (West 2003). Issue one
is overruled.

Appellant contends that the evidence is insufficient to support his conviction. In a
plea bargain case, the defendant must have the trial court's permission to appeal any matters except
those that were raised by written motion filed and ruled on before trial. Tex. R. App. P. 25.2(a)(2). 
Appellant does not have the trial court's permission to challenge the sufficiency of the evidence, and
the issue is not properly before us. See Lyon v. State, 872 S.W.2d 732, 736 (Tex. Crim. App. 1994)
(construing predecessor rule). In any event, appellant's sworn written judicial stipulation that he
"intentionally and knowingly possess[ed], with the intent to deliver, . . . 400 grams or more of
methamphetamine" is sufficient to support the finding of guilt. For the same reason that the State
was not required to allege the penalty group in the indictment, it was not required to prove the
penalty group in order to meet its burden of proof. Issue two is overruled.


SUPPRESSION ISSUES


Appellant contends that the trial court erred by overruling his motion to suppress the
methamphetamine and other evidence seized during a search of his residence because the affidavit
supporting the search warrant did not state probable cause. The affidavit was prepared and signed
by Sergeant Rickye Feist of the Texas Department of Public Safety (DPS) on December 28, 2005. 
The warrant was issued and executed that same day.

The probable cause portion of the affidavit began by describing Feist's extensive
training and experience in drug law enforcement. The affidavit then stated that in early 2005, DPS
Lieutenant Jed Shelton, working with the rural area narcotics task force, received an anonymous
telephone call. The caller told Shelton that appellant "was manufacturing and trafficking in
methamphetamine." The informer also said that appellant worked at Larry's Lube in Lampasas. The
affidavit went on to state that in May 2005, Shelton received another anonymous tip. This informer
stated that appellant was manufacturing and selling methamphetamine at his residence, located at
705A Western Street, in Lampasas. The informer also told Shelton that "a couple of months" prior
to the tip, appellant had had an accident while manufacturing methamphetamine and had blown a
hole in the ceiling and roof of his house. According to the affidavit, Sergeant Mike Gulledge
investigated the second tip and observed a large patch on the roof of the house. Gulledge also
identified appellant by personal observation and by his driver's license picture. Gulledge learned
that appellant had a "lengthy criminal record including arrests for manufacturing/delivery of
controlled substance in penalty group 1, and Forgery, securing execution of document by deception
and tampering with government records. [Appellant] is on parole until July 07, 2007." The affidavit
went on to state that on May 16, 2005, Gulledge met with appellant's parole officer, David Reed,
in Lampasas and advised him of the allegations. Reed agreed to do a home visit. Reed went to
Larry's Lube, picked up appellant, and went to 705A Western. While inside the residence with
appellant, Reed "verified that there was a hole in the roof of the kitchen which was in the process
of being repaired." Reed conveyed this information to Gulledge, who passed it on to Feist.

We quote most of the remainder of the affidavit:


On 12-20-2005, DPS Narcotics Sgt. Rickye K. Feist was contacted by Lampasas
Police Chief Tim Angerman, who advised that he had a source of information
regarding the narcotics activities of DAVID ALEXANDER BAILEY.


Sgt. Feist went to the Lampasas Police Department to personally interview the source
who has been identified but wishes to remain anonymous due to safety reasons.


The source told Sgt. Feist that the source has personal knowledge regarding the
illegal manufacture of methamphetamines and has also been a user of
methamphetamine. On or about 12-18-05 the source was at BAILEY's residence and
personally observed crushed pseudoephedrine tablets on a plate inside BAILEY's
dresser, two (2) plastic gas type containers in the kitchen sink with a black hose
connecting the two (2) containers. The source also personally observed other
chemicals under the sink area.


The source stated that on or about 12-18-05 the source personally smelled a strong
odor of Anhydrous Ammonia in the kitchen area.


The source told Sgt. Feist that BAILEY personally told the source that he was
utilizing the containers to manufacture Anhydrous Ammonia. 


The source told Sgt. Feist that on one occasion while BAILEY was manufacturing
methamphetamine that the smell of Ammonia was so strong that it almost killed him.


The source also told Sgt. Feist that the source saw several plastic baggies of
methamphetamine inside a dresser drawer in BAILEY's bedroom. 


The source told Sgt. Feist that when BAILEY was finished manufacturing the illegal
methamphetamine that BAILEY stored the containers under the kitchen sink area in
his residence.


Sgt. Feist has received training and is certified in investigative techniques relating to
clandestine methamphetamine laboratories and is also certified as a Site Safety
Officer and is familiar with the manufacture of methamphetamine and that this
information is consistent with the clandestine manufacture of methamphetamine.


The source told Sgt. Feist that source had personally observed and used
methamphetamine with BAILEY on numerous occasions while at his residence.


. . .


On 12-22-05, Sgt. Feist had the source place a recorded phone call to BAILEY to
discuss the manufacture of illegal methamphetamine. Sgt. Feist listened to the
recording and heard during the conversation that BAILEY agreed to let the source
assist him in the manufacture of methamphetamine on 12-27-2005.



Probable cause to support the issuance of a search warrant exists when the facts
submitted to the magistrate are sufficient to justify a conclusion that the object of the search is
probably on the premises to be searched at the time the warrant is issued. Cassias v. State,
719 S.W.2d 585, 587 (Tex. Crim. App. 1986); State v. Bradley, 966 S.W.2d 871, 873
(Tex. App.--Austin 1998, no pet.). The sufficiency of the affidavit is determined by considering the
totality of the circumstances set forth within the four corners of the document. Illinois v. Gates,
462 U.S. 213, 238 (1983); Hennessy v. State, 660 S.W.2d 87, 90 (Tex. Crim. App. 1983); Bradley,
966 S.W.2d at 873. The affidavit must be interpreted in a common sense and realistic manner,
recognizing that reasonable inferences may be drawn from the affidavit. Hespeth v. State,
249 S.W.3d 732, 737 (Tex. App.--Austin 2008, pet. ref'd). The issuing magistrate's determination
of probable cause must be given great deference and will be sustained if the magistrate had a
substantial basis for concluding that probable cause was shown. Gates, 462 U.S. at 236-37;
Swearingen v. State, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); Johnson v. State,
803 S.W.2d 272, 289 (Tex. Crim. App. 1990).

We agree with appellant that the anonymous tips received in early 2005 did not in
themselves give the magistrate probable cause to believe that methamphetamine was likely to be
found inside appellant's residence on December 28, 2005. The information received from the two
informers, in addition to being stale, contained no indicia of reliability. See Gates, 462 U.S. at
244-46; Parish v. State, 939 S.W.2d 201, 203 (Tex. App.--Austin 1997, no pet.). Although the fact
that the roof had been damaged was corroborated, there was no corroboration regarding the cause
of the damage. The parole officer's home visit with appellant at 705A Western did, however,
confirm that this address was appellant's residence.

The anonymous source Feist interviewed on December 20 was also an informer of
no established credibility. But unlike the earlier informers, this source provided information that was
recent and detailed, bore an indicia of reliability, and was corroborated by the affiant. Read in a
common sense manner, the affidavit told the magistrate that this source had been in appellant's
residence on December 18 and had seen, heard, and smelled things that Feist, a trained and
experienced narcotics officer, recognized were consistent with the illicit manufacture of
methamphetamine. Further, the source had called appellant on December 22 and, within Feist's
hearing, arranged to manufacture methamphetamine with appellant on December 27. Although the
source's claim to have seen methamphetamine in appellant's residence on December 18 was not
specifically corroborated by Feist, the corroboration of the source's other incriminating statements
gave the magistrate a reasonable basis for inferring that the claim was true. See State v. Ozuna,
88 S.W.3d 307, 310 (Tex. App.--San Antonio 2003, pet. ref'd). Giving the determination of
probable cause the deference it is due, we hold that the magistrate had a substantial basis for
concluding that methamphetamine would be found at appellant's residence on December 28, 2005. 
Issue three is overruled.

Appellant contends that the probable cause affidavit contained information that had
been unlawfully obtained and should not have been considered in determining whether probable
cause to search existed. First, appellant argues that appellant's parole officer unlawfully entered his
residence in May 2005 under false pretenses. Second, appellant asserts that the December 22
telephone call was unlawfully intercepted. See Tex. Penal Code Ann. § 16.02 (West Supp. 2009). 
Neither of these contentions was presented to the trial court, and thus neither was preserved for
appeal. See Tex. R. App. P. 33.1. Issue four is overruled.

Appellant contends that the affidavit contained material misstatements of fact. 
See Franks v. Delaware, 438 U.S. 154 (1978). Under Franks, it was appellant's burden to prove by
a preponderance of the evidence that Feist gave the magistrate false information knowingly or
intentionally, or with reckless disregard for the truth. Id. at 156; Massey v. State, 933 S.W.2d 141,
146 (Tex. Crim. App. 1996).

Appellant contends that Feist falsely stated in the affidavit that during the recorded
telephone conversation between appellant and the source on December 22, appellant "agreed to let
the source assist him in the manufacture of methamphetamine on 12-27-2005." Appellant urges that
the transcription of this call shows that there was no mention during the call of methamphetamine,
manufacturing, assisting, or the date. 

The transcription contains the following exchange between the source (CI) and
appellant:


CI: Do you think I could come Monday or Tuesday?


MR. BAILEY: You can come any time you want.


CI: Is the offer still on the table, me moving in so I can try to help myself out
(inaudible)?


MR. BAILEY: Certainly.


. . .


MR. BAILEY: I mean, if you're not trying to help yourself, why should I continue
to try and help you?


CI: Right. I'm making a rule for myself, like the only time I'm going to ever do dope
right then is when I'm with you, at your house or whatever. It's not why (inaudible)
you know what I mean? Yeah, I know it's very hard to quit anyway, but you know.


. . .


CI: I'm ready to, you know--I think I'm going to have to go about it in a weird way,
you know, like I plan to, you know, quit all the dope and all that, but maybe for
starters, you know, I can just (inaudible). Only time I do it is when I'm with you or
whatever at your house or something like that, you know.


MR. BAILEY: Well, I don't see--


 CI: There's less places to do it, less people to get it from, less--you know.


MR. BAILEY: I don't see that as what was causing your problem.


CI: I mean, I don't know. I guess we can talk about it, but I'm not going to do
anything until--you know, do anything until I go to your house with you there. Can
we wait for a while to (inaudible)?


MR. BAILEY: Huh?


CI: Can we wait? Can we do it--Can we cook it there when I come like on Monday
or Tuesday? Because I know I'm going to be needing it bad. I'm not going to lie. 
Because I'm not going to be able to do anything while I'm at my grandma's.


MR. BAILEY: Yeah. Don't worry about that. It's not a problem.


CI: Oh, so we can do it there when I get there?


MR. BAILEY: Yeah. 



When questioned at the suppression hearing regarding the accuracy of the affidavit's
description of the telephone call, Feist testified that the affidavit reflected his understanding of what
was said during the conversation "in terminology that we're used to in listening to narcotics
conversations." The trial court found Feist's testimony to be credible. In overruling appellant's
Franks contention, the trial court found:


Persons who sell, manufacture or deal in illegal and controlled substances often
speak obliquely and in street terminology regarding their plans and activities. The
recorded phone call includes discussions that are consistent with the manufacturing
of methamphetamine. Feist['s] description of the December 22, 2005 recording in
the [probable cause affidavit] is true and accurate. It is a reasonable interpretation
for a trained and experienced narcotics officer such as Feist to relate in an affidavit
for a search warrant that "BAILEY agreed to let the source assist him in the
manufacture of methamphetamine on 12-27-2005." 12-27-2005 was the Tuesday
following 12-22-2005.



We review a trial court's decision on a Franks issue under the same standard applied
to other suppression issues, and thus we give almost total deference to the court's rulings on
questions of historical fact and on applications of law to facts that turn on an evaluation of credibility
and demeanor. Fenoglio v. State, 252 S.W.3d 468, 473 (Tex. App.--Fort Worth 2008, pet. ref'd). 
During the recorded conversation, appellant agreed with the source that "we [can] cook it there
[appellant's residence] when I come like on Monday or Tuesday," which was December 26 and 27,
2005. This evidence, viewed in the light most favorable to the ruling and in the context of the
remainder of the conversation, reasonably supports the trial court's finding that Feist had a
good-faith belief that his description of the call was accurate. Appellant did not establish by a
preponderance of the evidence that Feist's account was intentionally or knowingly false, or made
with a reckless disregard for the truth.

Appellant complains of several other alleged misstatements in the affidavit, but he
did not challenge any of them in his Franks motion or at the hearing. Issue six is overruled.

Appellant also contends that Feist deliberately omitted material information from the
probable cause affidavit. He contends that Feist's affidavit failed to tell the magistrate: (1) appellant
told the source on December 22 that he did not have any methamphetamine, (2) appellant told the
source on December 22 that he did not want to make any methamphetamine, and (3) that the source
did not go to appellant's residence on December 27 to make methamphetamine.

Neither the Supreme Court nor the court of criminal appeals has decided whether
Franks applies to omissions from search warrant affidavits, but several federal and Texas courts
of appeals have applied the Franks analysis to omissions. See Darby v. State, 145 S3d 714,
722 (Tex. App.--Fort Worth 2004, pet. ref'd) (collecting cases); see also Massey v. State,
933 S.W.2d 141, 146 n.3 (Tex. Crim. App. 1996) ("This Court has indicated that we might not
recognize application of Franks to omissions of fact."); 40 George E. Dix & Robert O. Dawson,
Texas Practice: Criminal Practice and Procedure § 6.39 (2d ed. 2001 & Supp. 2008) (hereafter
"Dix & Dawson"). We will assume for the purpose of this opinion that Franks does apply to
omissions of fact.

One of the alleged omissions from the affidavit--appellant's claim that he told the
source on December 22 that he did not want to make methamphetamine--was not proved. The
transcriptions of the December 22 telephone calls do not contain such a statement, and appellant
cites only a leading question asked by defense counsel at the Franks hearing. Another of the alleged
omissions-- that the source did not go to appellant's residence on December 27--was not asserted
below. The trial court found that the only omission asserted and proved--that appellant told the
source on December 22 that he did not then possess any methamphetamine--was not a material
omission. We agree. This fact, had it been included in the affidavit, would not have rendered the
affidavit as a whole insufficient to show probable cause to search on December 28. See Darby,
145 S.W.3d at 722. Issue five is overruled.

Appellant was present at 705A Western Street when the police arrived to execute the
search warrant. The record shows that he was taken outside and searched, and that a bag containing
5.5 grams of methamphetamine was found in his pocket. Appellant contends that this search was
unlawful and that the trial court erred by failing to suppress the evidence seized. He bases this
contention on the fact that the warrant authorized only the search of the residence; it did not
expressly direct the police to arrest or search appellant.

Both the warrant and the supporting affidavit stated that the premises at
705A Western was under appellant's control. Texas case law assumes that officers executing a
search warrant may also detain and search a person found on the premises if that person is reasonably
believed to be an occupant or otherwise directly associated with the premises. See Worthey v. State,
805 S.W.2d 435, 438 n.5 (Tex. Crim. App. 1991); Conner v. State, 712 S.W.2d 259, 260
(Tex. App.--Austin 1986, pet. ref'd); see also Dix & Dawson § 6.104 (2d ed. 2001). In any event,
the officers had probable cause to arrest appellant based on their discovery of a large quantity
of suspected methamphetamine and methamphetamine paraphernalia inside the house. They
were authorized to search appellant's person as an incident of that arrest. See Ker v. California,
374 U.S. 23, 41 (1963). Issue seven is overruled.

In his remaining issue, appellant contends that the trial court's written judgment does
not conform to the court's oral pronouncement of sentence. The sentence pronounced in open court
was thirty-five years' imprisonment. The written judgment, in addition to the prison term, imposes
a $2000 fine and orders appellant to pay $209 in court costs and $140 in restitution. The State
concedes that the judgment should be reformed to delete the fine. Because "restitution is
punishment," we conclude that the restitution order must also be deleted. See Ex parte Cavazos,
203 S.W.3d 333, 338 (Tex. Crim. App. 2006). Court costs are not punitive, however, and need not
be included in the oral pronouncement of sentence as a precondition to their inclusion in the written
judgment. Weir v. State, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009).

Appellant also asserts that the judgment does not give him the proper amount of
jail time credit. See Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a) (West Supp. 2009). The
judgment states that appellant is to receive credit for time spent in jail from December 28, 2005 to
June 11, 2007, which we calculate to be 530 days. Appellant refers us to this statement by defense
counsel at sentencing: "I've been presented here a document that indicates he has 638 days [jail
credit]." The document to which counsel referred is not in the record. We do not have sufficient
information before us to determine whether the time credit awarded in the judgment is correct. If
appellant can document his claim to additional jail time credit, he should apply to the district court
for a judgment nunc pro tunc. See Ex parte Ybarra, 149 S.W.3d 147, 148 (Tex. Crim. App. 2004). 
Issue eight is sustained in part and overruled in part.

The district court judgment is reformed to delete the fine and restitution. As
reformed, the judgment is affirmed. 



 __________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Modified and, as Modified, Affirmed

Filed: October 27, 2009

Do Not Publish