

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-12-00043-CR

JOHNNY PEREZ                                                     APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

## FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Johnny Perez appeals his conviction for possession of a controlled substance; namely, methamphetamine—more than four but less than 200 grams.[2] In four issues, Perez argues that the evidence is insufficient to prove that he possessed methamphetamine, that the trial court erred by denying

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. § 481.115(d) (West Supp. 2010).

his motion for a directed verdict, and that the trial court erred by denying his request for a jury instruction under Article 38.23(a) of the Texas Code of Criminal Procedure. We will affirm.

## II. BACKGROUND

Wichita Falls Police Department's SWAT Team and Organized Crime Unit executed a narcotics search warrant on a residence located at 308 Lee Street, Wichita Falls, Texas, on October 1, 2010, at roughly 6:45 a.m. SWAT Team member Officer Gabriel Vasquez III testified at trial that when he entered the residence through a side doorway, he encountered Perez in a bedroom, lying on a bed. As Vasquez approached Perez, while pointing a rifle equipped with a flashlight at him, Vasquez commanded Perez to raise his hands. Perez initially complied by raising his hands, but according to Vasquez, Perez then began to place his hands underneath "the headboard, pillow region" of the bed. Viewing this as a potential threat, Vasquez said that he "nudged" Perez with his rifle barrel and re-issued the command for Perez to raise his hands. Perez raised his hands a second time. Another officer then handcuffed Perez, and Vasquez escorted Perez out of the residence. Vasquez testified that after escorting Perez outside, he conducted "prisoner watch" while other officers searched the premises.

Officer Karl King of the Organized Crime Unit testified that in addition to Perez, two other individuals were located in the 308 Lee Street residence but that they were located in another living area of the residence. King identified these

2

two individuals as "a Gelacio, and . . . a Jennifer Day." Upon searching the bedroom where Vasquez found Perez, King discovered an Advil container between the mattress and the box springs of the bed that Perez had been lying on. King testified that inside the Advil container, he found approximately twelve grams of assorted pills and two plastic baggies. King averred that one of the baggies contained over one gram of methamphetamine and that the other baggie contained ten separate bags, each containing what King explained were individual packages of methamphetamine that would typically be sold in the streets for roughly $20 apiece. King also said that he discovered another plastic baggie containing .14 grams of methamphetamine on the floor between the wall and the head of the bed. In all, the total weight of the methamphetamine found in the bedroom was 5.26 grams. King further testified to having found a set of digital scales on the dresser in the bedroom. He also found, between the mattress and box springs, a wallet containing $211 and two debit cards with the name "Johnny Perez" on them.

During the defense's cross-examination of King, defense counsel introduced in evidence, and the trial court admitted, the search warrant. Defense counsel then began to ask King about his use of a confidential informant (CI) who provided information that led to King obtaining the search warrant. King testified that while in general confidential informants will assist police for "[m]oney, [to] work off charges, [or for] revenge," he had never had a drug dealer "snitch off on [an]other drug dealer[]." King averred that the CI in this case, who King had used

3

in the past, told him that Perez "was in possession of suspected methamphetamine and that [the] substance was for sale." King said that he paid the CI $200 for that information and for the CI to conduct a controlled buy at the 308 Lee Street residence. Toward the end of his cross-examination, defense counsel questioned whether the CI had in fact purchased methamphetamine from someone other than Perez. King responded, "No, sir." When defense counsel inquired further how King knew that the CI had not purchased methamphetamine from one of the other individuals who were at the 308 Lee Street residence, King said that the CI knew Perez. Defense counsel responded with the question, "Then [the CI] needs to be here testifying, doesn't he?" King responded, "No, he [doesn't]." When pressed as to why the CI did not need to testify, King said "Because he's confidential, credible, and reliable." Defense counsel did not move the trial court for a disclosure of the identity of the CI.[3] Defense counsel also did not otherwise make any objections or move the trial court for further inquiry regarding the CI's identity or veracity.

After calling its expert witness to testify about the toxicology report regarding the methamphetamine found at the 308 Lee Street residence, the State rested. At that time, and outside the presence of the jury, Perez's defense

---

[3]*See* Tex. R. Evid. 508(c)(3) ("If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the court is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, it may require the identity of the informer to be disclosed. The court shall, on request of the public entity, direct that the disclosure be made in camera.").

4

counsel moved for a directed verdict: "Yes, your Honor. We'd move for Directed Verdict. The State has failed to produce the witness that has testified against him, which actually started this entire case. And I think he's entitled to confront this witness, and they have failed to do so." The trial court inquired, "Which witness are you talking about?" Defense counsel responded, "This alleged informant." The trial court overruled Defense counsel's motion.

Defense counsel called Perez's brother, Joe Perez, to the stand. Joe testified that Perez could not drive because "[h]e's going blind." Joe said that Perez was not at the 308 Lee Street residence on the day the CI made the controlled buy and that on the morning of the search, Joe drove Perez from Fort Worth, leaving at "about 3:00 in the morning," to the 308 Lee Street residence, arriving at "about 6:00 in the morning." Defense also called Perez's son, Michael Perez, to testify. Michael testified that his brother, Perez's other son, owned the 308 Lee Street residence. Michael averred that multiple people in his family have lived in the residence from time to time while his brother serves a prison sentence. Michael said that his brother had called him from prison concerned that somebody was living at the 308 Lee Street residence without permission. Michael said that he checked on the 308 Lee Street residence "probably about September the 7th."

By Michael's account, Gelacio and a girl were there and Michael informed them that they were not supposed to be, but Michael said that he did not press the issue because Gelacio "has a bad temper to where I really can't tell him

5

anything. So I just left." When questioned about whether Perez lived at the 308 Lee Street residence, Michael said, "He would go as much as I do to check on the house. Sometimes he'll stay a night to make sure no one breaks in. And I do the same thing." According to Michael, whenever he or Perez stayed at the residence overnight, they would use the bedroom where Vasquez found Perez when police executed the search warrant.

After the State and Perez rested, and outside the presence of the jury, Perez requested that a Code of Criminal Procedure Article 38.23(a) instruction be included in the charge.[4] During the discussion that ensued, Perez cited the Confrontation Clause, the Fifth Amendment, hearsay, and at one point stated, "[T]his is a Franks case -- situation." The trial court denied Perez's request and submitted the charge, without an Article 38.23(a) instruction, to the jury. The jury found Perez guilty. After a punishment hearing, the jury found an enhancement paragraph true and assessed punishment at life in prison. The trial court announced judgment accordingly, and this appeal followed.

### III. DISCUSSION

#### A. Sufficiency of the Evidence of Possession

In his first and second issues, Perez argues that the evidence is "legally" and "factually" insufficient to prove that he possessed the methamphetamine found in the bedroom where police discovered him lying on the bed when

---

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2005).

6

executing their warrant. Perez's argument is predicated on the notions that because there were "two other people in the house who could have hidden the contraband anywhere in the house" and because "the State failed to introduce any evidence showing that [he] actually lived" at the 308 Lee Street residence, the State failed to link Perez to the methamphetamine found there. We conclude that the evidence is sufficient to support the jury's determination that Perez possessed the methamphetamine.

### 1. Standard of Review

The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (*overruling Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 912.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

### 2.    Law of Possession

A person possesses an object if he has actual care, custody, control, or management of that object.  Tex. Health & Safety Code Ann. § 481.002(38) (West 2010).  When drugs are found and the accused is not in exclusive possession of the place where they are found, the connection to the drugs must be more than fortuitous, and to this end, Texas courts utilize a links rule that is designed to protect innocent bystanders from conviction merely because of their proximity to someone else's drugs.  *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control, but presence or proximity, when combined with other evidence, direct or circumstantial, may be sufficient. *Evans*, 202 S.W.3d at 161–62.  Such "links" generate a reasonable inference that the accused knew of the contraband's existence and exercised control over it.  *See id.*  Courts have identified the following factors that may help to show an accused's links to a controlled substance:    (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to

8

flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Olivarez*, 171 S.W.3d at 291. It is not the number of links that is dispositive but, rather, the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

The evidence in this case establishes sufficient links that raise reasonable inferences of Perez's knowledge and control of the methamphetamine. Perez was not only present at the 308 Lee Street residence when police searched but Vasquez discovered him lying on a bed in the front bedroom where officers found methamphetamine. Vasquez testified that as he entered the bedroom, he gave a verbal command for Perez to raise his hands. Initially, Perez complied. Vazquez said, however, that Perez then began to place his hands underneath "the headboard, pillow region," and Vasquez described this as a "furtive movement." The search team found a plastic baggie containing .14 grams of methamphetamine between the "wall and the head of the bed." Perez's furtive movement tends to demonstrate that he had knowledge of this methamphetamine, as well as control over it. *See Davis v. State*, 855 S.W.2d 855, 857 (Tex. App.—Eastland 1993, no pet.) (reasoning that the defendant's

9

furtive gestures "[g]oing towards the bottom of the passenger's seat" linked the defendant to the contraband found there). The logical force of this evidence is that Perez was attempting to conceal the contraband that King found in that very location. The force of this evidence is even more compelling considering that despite having a gun pointed directly at him as he was commanded to raise his hands, Perez was willing to hide his hands from Vasquez's view. The movement caused Vasquez to strike Perez with his rifle barrel: "I struck him with my rifle barrel -- nudged him [and t]old him once again to raise his hands."

King also found an Advil bottle containing approximately twelve grams of assorted pills and two plastic baggies containing methamphetamine located between the mattress and the box spring of the bed where Perez was found lying. One of the baggies of methamphetamine contained ten individual baggies of methamphetamine that King testified was segregated into individual amounts that were common portions to be sold in the streets for roughly $20 each. Furthermore, King found a wallet with $211 and two debit cards with the name "Johnny Perez" on them in-between the mattress and box springs. *See Nhem v. State*, 129 S.W.3d 696, 699–700 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (reasoning that a driver license and telephone bills in appellant's name found between bed mattresses, where cocaine rocks were also found, tended to link appellant to cocaine). The logical force of this evidence tends to demonstrate that Perez had accessibility and proximity to the methamphetamine found between the mattress and the box springs.

King testified that he found digital scales located in plain view on top of a dresser in the bedroom that Perez occupied. King averred that digital scales are commonly found where drugs are sold. This evidence, when coupled with the individual baggies containing methamphetamine, tends to link Perez to the scales and the methamphetamine found in the bedroom. Furthermore, even though there is no evidence that Perez owned the 308 Lee Street residence, Perez introduced evidence that he would sometimes stay the night and sleep in the bedroom where he was found when the police executed the search warrant. The logical force of this evidence is that the connection between Perez and the methamphetamine was more than fortuitous. Given the logical force of all of this evidence and viewing it in the light most favorable to the verdict, we conclude that the jury could have found that Perez possessed the methamphetamine found at the 308 Lee Street residence. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903. We overrule Perez's first and second issues.

## B.      Perez's Motion for Directed Verdict

In his third issue, Perez argues that the trial court erred by overruling his motion for directed verdict. Perez's argument seems to be that he was denied his right to confront the CI under the Confrontation Clause of the Sixth Amendment to the United States Constitution when the trial court "refused his motion to disclose the name of the CI." *See* U.S. Const. Amend. VI. Thus, Perez argues that he was denied his constitutional right to confront a State's witness; namely, the CI.

11

Perez does not point to any place in the record where he moved the trial court for a disclosure of the name of the CI, nor can we find any such motion. *See* Tex. R. Evid. 508(c)(3). Furthermore, the first time that Perez ever objected to an alleged Confrontation Clause error was when he moved for directed verdict after the State had completed putting on its case in chief, which was well after Perez and the State had questioned King regarding the CI and the information King obtained from the CI that served as part of King's probable-cause affidavit when seeking the search warrant. All of this testimony was born out of Perez having introduced the warrant into evidence and first questioning King about what information was learned from the CI.

We conclude that Perez has failed to preserve any potential error, invited or not, because he failed to object to any alleged Confrontation Clause issue at the earliest opportunity. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000), *cert. denied*, 531 U.S. 1128 (2001) ("Because he did not object to error under the Confrontation Clause, appellant waives this argument on appeal."); *see also Thornton v. State*, No. 12-04-00045-CR, 2006 WL 319015, at *2 (Tex. App.—Tyler Feb. 10, 2006, pet. ref'd) (mem. op., not designated for publication) ("To preserve error on Confrontation Clause grounds, an objection must be made at trial as soon as the basis for such objection becomes apparent."). We overrule Perez's third issue.

## C. Perez's Requested Jury Instruction

In his fourth issue, Perez argues that the trial court erred by denying his request for a jury instruction under Article 38.23(a) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a). Citing the Confrontation Clause of the Sixth Amendment and alleging that "the State did not produce" the CI who provided information about Perez that served as part of the probable-cause warrant to search the 308 Lee Street residence, Perez argues that the evidence adduced at trial created a genuine dispute about the "lawfulness . . . in obtaining the [methamphetamine]" used to convict Perez for possession. *See* U.S. Const. Amend. VI. Specifically, Perez argues that there exists a fact issue in this case as to whether the CI "may have lied to [King] in order to frame [Perez], either to reduce competition, get revenge, or for money," and that the jury should have been allowed to evaluate whether the CI "may have lied" about purchasing methamphetamine from Perez prior to the search of the 308 Lee Street residence, and thus whether the methamphetamine should have been "suppressed."

The State argues that Perez is improperly attempting to raise a "*Franks* claim" by way of requesting an Article 38.23(a) jury instruction. *See Fenoglio v. State*, 252 S.W.3d 468, 473 (Tex. App.—Fort Worth 2008, pet. ref'd) ("Under *Franks*, a search warrant affidavit must be voided, and any evidence obtained pursuant to the search warrant excluded, if a defendant can establish by a preponderance of the evidence at a hearing that the affidavit contains a false

statement made knowingly or intentionally, or with reckless disregard for the truth.") (*citing Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676 (1978)). We conclude that the trial court was not required to give an instruction under Article 38.23(a) because the evidence in this case did not raise a disputed fact issue requiring the instruction.

When reviewing a claim that the trial court failed to properly charge the jury, we first determine whether error occurred; if error did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The purpose of the trial judge's jury charge is to instruct the jurors on "all of the law that is applicable to the case." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). And when there is a disputed fact issue that is material to the defendant's claim of a constitutional or statutory violation that would render evidence inadmissible, an exclusionary-rule instruction is required by Article 38.23(a). *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). But a confidential informant's identity and testimony regarding the information used to form probable cause to issue a warrant is not relevant to the determination of guilt for possession of a controlled substance when the informant is not present at the time a warrant is executed, when the defendant is arrested, or when the commission of the offense charged is alleged to have occurred. *Edwards v. State*, 813 S.W.2d 572, 580 (Tex. App.—Dallas 1991, pet. ref'd); *Washington v. State*, 902 S.W.2d 649, 656–57 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd).

14

As already discussed, the State charged Perez with possession of a controlled substance; namely, methamphetamine. A person possesses an object if he has actual care, custody, control, or management of that object. Tex. Health & Safety Code Ann. § 481.002(38). The CI's identity and any testimony he could have provided would not have been relevant to the State's charge that Perez had actual care, custody, control, or management of the methamphetamine discovered by the officers when they conducted a search of the 308 Lee Street residence. This is so because the CI was not at the residence when officers executed the warrant, he was not there when the officers arrested Perez, and he was not there when the officers discovered Perez lying on a bed with methamphetamine tucked under the mattress and between the headboard and the wall. *See Patterson v. State*, 138 S.W.3d 643, 649 (Tex. App.—Dallas 2004, no pet.) (reasoning that in a possession with intent to deliver methamphetamine case, trial court did not abuse its discretion by denying appellant's motion to compel discovery of confidential informant's identity because "Appellant point[ed] to no evidence that the informant was present during the execution of the warrant and the arrest or that he had any information that would be relevant to appellant's guilt or innocence"). In short, Article 38.23(a) was not applicable to the case and the trial court did not err by refusing Perez's request that an Article 38.23(a) instruction be included in the jury charge. *See Vasquez*, 389 S.W.3d at 366. Because we hold that the trial court did not

15

err by refusing to include Perez's requested instruction, our analysis ends and we overrule Perez's fourth issue.

## IV. CONCLUSION

Having overruled all of Perez's issues on appeal, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 29, 2013

16