# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00654-CR

**William Ray Sponsler, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 10-1496-K26, THE HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, William Ray Sponsler, of possession of a controlled substance, methamphetamine, in an amount of four grams or more but less than 200 grams, and unlawful possession of a firearm by a felon. *See* Tex. Health & Safety Code § 481.115(a), (d); Tex. Penal Code § 46.04(a)(1). The jury found the enhancement paragraphs alleging previous sequential felony convictions to be true and assessed appellant's punishment, enhanced pursuant to the habitual-offender punishment provision of the Penal Code, at confinement for 61 years in the Institutional Division of the Texas Department of Criminal Justice for each of the two offenses. *See* Tex. Penal Code § 12.42(d). On appeal, appellant complains about the trial court's denial of his motion to suppress, error in the punishment jury charge, and the disqualification of a defense witness. Additionally, through our own review of the record, we have found clerical errors in the written

judgments of conviction. We will modify the judgments to correct the clerical errors and, as modified, affirm the judgments of conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

The record reflects that John Hawkins, a narcotics detective with the Cedar Park Police Department, received numerous citizen complaints that appellant was selling methamphetamine out of his residence. Detective Hawkins was personally familiar with appellant, having arrested him previously for manufacturing methamphetamine, and knew that he had a prior conviction for the unlawful receipt or transfer of certain chemicals stemming from that arrest. As a result of these citizen complaints, detectives conducted surveillance of appellant's residence over a period of several days in late October 2010. During that time, detectives observed numerous cars coming and going from the residence, staying only for a short period of time, in a pattern indicative of the sale of narcotics.

On the evening of October 20, 2010, Detective Hawkins and Detective Michele Christensen, another detective with the Cedar Park Police Department who was assisting in the investigation, observed a pickup truck arrive at appellant's property and stay for approximately 30 minutes, a stop-and-go visit consistent with the pattern they had observed. When the truck left appellant's property, the detectives followed the vehicle, observed a traffic violation, and dispatched a patrol unit to initiate a traffic stop. Officer Joseph Christensen, a patrol officer with the Cedar Park Police Department, initiated a traffic stop of the pickup. Officer Christensen determined that the driver of the truck was Mark Boatright. After he made contact with Boatright, the officer asked Boatright for consent to search his truck and his person. Boatright consented. During the search of

2

Boatright, the officer found, in one of Boatright's socks, a clear plastic baggie containing a substance he believed, based on his training and experience, to be methamphetamine. On discovering the baggie, Officer Christensen asked several questions, including what the substance was and where Boatright got it. Boatright admitted that the substance was methamphetamine and disclosed that he obtained it from appellant. Officer Christensen then read Boatright his *Miranda* warnings[1] and placed him in his patrol car as officers conducted the search of the pickup.

Detective Christensen then arrived at the scene of the traffic stop. Officer Christensen and Detective Christensen then questioned Boatright in greater detail about the methamphetamine purchase from appellant. Boatright explained that he purchased the methamphetamine from appellant that evening, prior to the traffic stop. He indicated that he had also purchased methamphetamine from appellant earlier that day. He also revealed that he had been purchasing drugs from appellant for approximately six months. Boatright gave detailed information about appellant's workshop and his previous drug purchases from appellant. Officer Christensen then communicated with Detective Hawkins, who then obtained a search warrant for appellant's workshop.

The Cedar Park Police Special Response Team executed the search warrant by gaining entrance to the property and securing the scene for the search team. A number of people were found on the property, one of whom fled out the back of the workshop but was detained by officers outside. Appellant was the only person seized inside the workshop building. After the area

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (requiring demonstration of use of procedural safeguards effective to secure privilege against self-incrimination before evidence obtained as result of custodial interrogation may be used against defendant).

3

had been secured, officers entered the building and began their search of the workshop and the bedroom in the back of the workshop. Under a sink cabinet in the bedroom portion of the building, Detective Christensen found three bags of a substance she believed, based on her training and experience, to be methamphetamine. Subsequent lab testing revealed that the substance, weighing 5.36 grams, did in fact contain methamphetamine. Officers also found a number of small clear empty plastic baggies in the sink area. On the bed in plain view, officers found a bag of syringes and some metal pipes that could be used to smoke methamphetamine. Detective Hawkins also found two rifles in the bedroom leaning against a wall. Based on evidence found during the search, Detective Hawkins subsequently obtained an additional search warrant to search the remainder of the property, including all buildings and structures. Appellant was arrested and subsequently charged in a two-count indictment with the offenses of possession of a controlled substance and unlawful possession of a firearm by a felon. *See* Health & Safety Code § 481.115(a), (d); Penal Code § 46.04(a)(1).

Before trial, appellant filed five separate motions to suppress. The motions sought to suppress evidence seized pursuant to the search warrant executed on his residence and evidence resulting from his detention.[2] In the motions, appellant alleged that law enforcement officers lacked probable cause to search his residence, that the search warrant affidavit failed to establish probable cause to search his residence, that the search exceeded the scope of the search warrant, and that he

---

[2] In addition, one of the motions to suppress explicitly sought to suppress any oral or written statements of appellant. However, the record demonstrates that no such statements were made.

4

was illegally detained, searched, and arrested. The trial court conducted a hearing on the motions during trial and denied them.

At trial, law enforcement officers testified about the above-described investigation and search. A chemist from the Department of Public Safety laboratory testified about his analysis of the methamphetamine. In addition, appellant's niece testified about the ownership and living situation of the property. She stated that appellant's mother owned the property and lived in the residence but allowed others to stay on the property, including appellant, who lived by himself in the bedroom at the back of the workshop. The State also offered an "Agreed Stipulation" in which appellant admitted that he had previously been convicted of the felony offense of unlawful transfer or receipt of a chemical precursor on January 24, 2000, had gone to prison for that offense, and had been released from confinement in July of 2008. Four witnesses, including appellant's common law wife and his mother, testified on his behalf.

The jury found appellant guilty of both possession of a controlled substance and unlawful possession of a firearm by a felon, as alleged in the indictment. At the punishment phase of trial, appellant entered pleas of true to the habitual-offender enhancement allegations of the indictment. The State introduced penitentiary packets reflecting appellant's six prior felony convictions as well as evidence showing his parole record for each of his prior convictions. Detective Hawkins also testified about the circumstances of his previous arrest of appellant, which had resulted in his conviction for unlawful receipt of a chemical precursor. Appellant's mother again testified on appellant's behalf, indicating that her son had a long-time drug problem but that since his last release from prison she had not seen any indication that he was using drugs. The jury

assessed appellant's punishment at 61 years' imprisonment on each count. The trial court imposed the sentences in accordance with the jury's verdicts, ordering the sentences to run concurrently. Appellant now appeals his convictions.

## DISCUSSION

In his first two points of error, appellant argues that the trial court erred in denying his motion to suppress evidence obtained pursuant to the search warrant.[3] In his third point of error, he complains of error in the court's jury charge on punishment. In his fourth point of error, appellant challenges the trial court's exclusion of the testimony of defense witness Mark Boatright.

### Search Warrant Affidavit

Appellant claims in his first point of error that the affidavit in support of the search warrant failed to establish probable cause to believe that he possessed methamphetamine at his workshop.

The Fourth Amendment establishes a constitutional preference that a search be conducted pursuant to a warrant. *Jones v. State*, 364 S.W.3d 854, 856–57 (Tex. Crim. App.), *cert. denied*, 133 S. Ct. 370 (2012) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)); *see* U.S. Const. amend. IV. Under Texas law, no search warrant may issue without a sworn affidavit that sets forth facts sufficient to establish probable cause. Tex. Code Crim. Proc. arts. 1.06, 18.01(b), (c); *see* Tex. Const. art. I, § 9. Probable cause exists when, under the totality of the circumstances, there is a fair

---

[3] As noted previously, appellant filed five motions to suppress. However, the parties and the trial court refer to them, and treat them, as a single motion to suppress.

6

probability that contraband or evidence of a crime will be found at the specified location at the time the warrant is issued. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *see State v. Delagarza*, 158 S.W.3d 25, 26 (Tex. App.—Austin 2005, no pet.) (facts contained in probable cause affidavit must be sufficient to justify conclusion that object of search is probably on premises at time warrant is issued). The test for finding probable cause is "whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a substantial basis for the issuance of the warrant, thus, the magistrate's sole concern should be probability." *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007).

Because of the constitutional preference for searches to be conducted pursuant to a warrant, we apply a highly deferential standard of review when we review the magistrate's decision to issue a search warrant. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *State v. Webre*, 347 S.W.3d 381, 384 (Tex. App.—Austin 2011, no pet.). Under this highly deferential standard, we interpret the affidavit in a commonsensical and realistic manner, and we defer to all reasonable inferences that the magistrate could have made. *McLain*, 337 S.W.3d at 271; *Rodriguez*, 232 S.W.3d at 61; *see Bonds*, 403 S.W.3d at 873. We consider the totality of the circumstances and determine whether there are sufficient facts stated within the four corners of the affidavit, coupled with inferences from those facts, to establish a fair probability that evidence of a particular crime would likely be found at a specified location. *Rodriguez*, 232 S.W.3d at 62; *see Flores v. State*, 319 S.W.3d. 697, 702 (Tex. Crim. App. 2010). "The focus is not on what other facts could or should have been included in the

7

affidavit; the focus is on the combined logical force of facts that are in the affidavit." *Duarte*, 389 S.W.3d at 354–55 (citing *Rodriguez*, 232 S.W.3d at 62).

As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination. *Bonds*, 403 S.W.3d at 873; *McLain*, 337 S.W.3d at 271; *see Gates*, 462 U.S. at 238–39. Although the reviewing court is not a "rubber stamp," "the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review." *Jones*, 364 S.W.3d at 856–57 (quoting *Flores*, 319 S.W.3d at 702).

Considering the totality of the circumstances in the present case, we hold that the affidavit sufficiently established probable cause to justify the issuance of the search warrant. Appellant's residence had been the subject of numerous citizen complaints of reported narcotics activity. As a result of these reports, appellant's property had been placed under surveillance. During that surveillance, officers observed a pickup truck come and go from the workshop in a manner indicative of narcotics activity. This observation corroborated the information provided by the citizen complaints. Further, the driver of that truck, Boatright, was found in possession of methamphetamine shortly after he left appellant's property. He indicated that he obtained the methamphetamine from appellant earlier that evening as well additional methamphetamine from him earlier that day. Appellant's previous arrest for the manufacture of methamphetamine, by this affiant, also lends corroboration to the statements of the citizen complaints and Boatright. From the face of the detective's affidavit, the magistrate had a substantial basis to find, either directly or

8

through reasonable inference, that there was a fair probability that methamphetamine or evidence of a crime would be found at appellant's workshop at the time the affidavit was signed.

Appellant contends that the unconfirmed information from Boatright (that he obtained his methamphetamine from appellant) alone cannot support a finding of probable cause. *See Duarte*, 389 S.W.3d at 356 ("The citizen-informer is presumed to speak with the voice of honesty and accuracy. The criminal snitch who is making a quid pro quo trade does not enjoy any such presumption; his motive is entirely self-serving."). However, contrary to appellant's claim, this information was neither uncorroborated nor the sole basis for the probable-cause finding. Boatright's report that he obtained the narcotics from appellant prior to the traffic stop was corroborated by the fact that law enforcement officers observed him at appellant's home, in a come-and-go visit consistent with narcotics activity, immediately before the traffic stop during which he was found possessing methamphetamine. Moreover, appellant's property was under surveillance because of "numerous citizen complaints" of suspected narcotics activity. Finally, appellant was personally known to the affiant for having a criminal history involving methamphetamine.

Considering the totality of the circumstances, we hold that the affidavit sufficiently established probable cause justifying the issuance of the search warrant. Appellant's first point of error is overruled.

### *Franks* Claim

In his second point of error, appellant contends that the evidence seized from his workshop pursuant to the search warrant should have been suppressed because Detective Hawkins's search-warrant affidavit contained a false statement that was made knowingly and intentionally.

9

Specifically, appellant challenges the statement in the affidavit that reflects that Boatright was given his *Miranda* warnings before he disclosed that he obtained methamphetamine from appellant, rather than after. He contends that but for this statement, there would not have been sufficient probable cause for a warrant, and the trial court erred in not striking that portion of the affidavit and granting his motion to suppress.

The Fourth Amendment requires that a defendant be allowed to challenge the veracity of a probable cause affidavit "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *see Emack v. State*, 354 S.W.3d 828, 837 (Tex. App.—Austin 2011, no pet.). To require the trial court to hold a *Franks* evidentiary hearing and to preserve the issue for appellate review, a defendant must (1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) accompany these allegations with an offer of proof stating the supporting reasons; and (3) show that, when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant. *Harris v. State*, 227 S.W.3d 83, 85–86 (Tex. Crim. App. 2007); *Cates v. State*, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003). Specific allegations and evidence must be apparent in the pleadings in order for a trial court to even entertain a *Franks* proceeding. *Harris*, 227 S.W.3d at 85.

10

Appellant did not meet the requirements necessary to obtain a *Franks* hearing in the trial court. He did not allege a *Franks* violation in any of the five motions to suppress.**⁴** Appellant's counsel made no mention of *Franks* until his closing argument at the suppression hearing when he addressed the issue of the sufficiency of the affidavit to establish probable cause. Even then he complained of Detective Hawkins's failure to question Officer Christensen specifically about the timing of events—rather than just accepting a narrative from the officer—and put that information in his affidavit, characterizing that failure as a "material omission" under *Franks*.**⁵**

Appellant's counsel's mere reference to *Franks* in his closing argument did not satisfy the pleading and evidentiary requirements for obtaining a *Franks* hearing. *See Harris*, 227 S.W.3d

---

**⁴** The only arguable reference to *Franks* in any of appellant's motions to suppress was the following sentence in counsel's affidavit attached to his last motion filed the day before trial began:

> After a review of all the provided discovery in this case, it is my belief that the individual John Hawkins of the Cedar Park Police Department, in filing the affidavit which is contained in both search warrants, in this case, either made a material omission, deliberate falsehood, or acted with a reckless disregard for the truth.

There is no mention of what specific portion of Hawkins's affidavit was allegedly false or what the material omission was, nor any offer of proof to contradict whatever that alleged misrepresentation was. This conclusory assertion falls far short of what is required under *Franks*. *See Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007); *see also Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.").

**⁵** We note that by its express terms, the holding in *Franks* applies only to affirmative misstatements contained in a probable-cause affidavit. *Emack v. State*, 354 S.W.3d 828, 837 (Tex. App.—Austin 2011, no pet.). Neither the Supreme Court nor the Texas Court of Criminal Appeals has held that *Franks* applies to mere omissions of fact, although several lower courts have so held. *Id.* at 837–38; *see Darby v. State*, 145 S.W.3d 714, 722 (Tex. App.—Fort Worth 2004, pet. ref'd) (collecting cases); *see also Massey v. State*, 933 S.W.2d 141, 146 n.3 (Tex. Crim. App. 1996) ("This Court has indicated that we might not recognize application of *Franks* to omissions of fact."). However, we need not resolve that issue here because appellant characterizes the inaccuracies about the timing of the *Miranda* warnings as a false statement rather than a material omission.

11

at 85. Nevertheless, although we are not convinced that appellant made a "substantial preliminary showing" under *Franks*, the trial court opted to entertain the *Franks* issue raised by counsel's argument at the suppression hearing.[6] The question then becomes whether appellant met his burden of proving a knowing false statement.

An affidavit supporting a search warrant begins with a presumption of validity. *Cates*, 120 S.W.3d at 355. Appellant has the burden of establishing by a preponderance of the evidence the allegation of perjury or reckless disregard for the truth. *Franks*, 438 U.S. at 156; *Harris*, 227 S.W.3d at 85; *Emack*, 354 S.W.3d at 838; *see also Fenoglio v. State*, 252 S.W.3d 468, 472–73 (Tex. App.—Fort Worth 2008, pet. ref'd). We review the trial court's ruling on a *Franks* claim under the same standard applied to search-and-seizure issues generally: we give almost total deference to the court's rulings on questions of historical fact and mixed questions of law and fact that turn on an evaluation of credibility and demeanor, but we review de novo the trial court's application of the law to those facts. *Emack*, 354 S.W.3d at 838; *Jordan v. State*, 271 S.W.3d 850, 854 (Tex. App.—Amarillo 2008, pet. ref'd); *Fenoglio*, 252 S.W.3d at 473; *see Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

As we review the record to determine whether appellant met his burden of showing deliberate falsity or reckless disregard for the truth, we are mindful that the Fourth Amendment requires a truthful factual showing when determining probable cause. *See Franks*, 438 U.S. at

---

[6] The record reflects that the trial court rejected appellant's *Franks* claim because the court found that Detective Hawkins accurately stated the sequence of events in his affidavit. During oral argument, however, the State conceded that the trial court's finding with respect to that issue was incorrect.

164–65. "Truthful," however, does not mean that every fact recited in the affidavit must be precisely accurate, "for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* at 165. Rather, "truthful" in this context means that the information put forth in the affidavit is believed or appropriately accepted by the affiant as true. *Id.*; *Clement v. State*, 64 S.W.3d 588 (Tex. App.—Texarkana 2001, pet. ref'd); *see Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996). If the statement in the search-warrant affidavit that is claimed to be false or made in reckless disregard for the truth only evidences an instance where the police have been merely negligent or mistaken in checking or recording the facts relevant to a probable-cause determination, it is beyond the scope of *Franks*. *Dancy v. State*, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987) (misstatement in affidavit that is result of simple negligence or inadvertence will not invalidate warrant); *see Franks*, 438 U.S. at 171 ("[a]llegations of negligence or innocent mistake are insufficient" to warrant striking portions of affidavit).

Here, the evidence showed that Detective Hawkins's statements regarding the events of Boatright's traffic stop, including the time of the *Miranda* warnings, were included in the affidavit because he believed and appropriately accepted the information set forth in the affidavit as true. Appellant asserts that the detective intentionally re-ordered the sequence of events but offered no proof to that effect at the suppression hearing. There was no showing during the suppression hearing that the detective's statement was made with the type of knowledge, intent, or recklessness contemplated by *Franks*. In fact, appellant never established that Detective Hawkins was aware that his statement concerning the timing of the *Miranda* warnings was incorrect, either at the time he

13

included the statement in his affidavit or even when he testified at the suppression hearing. Detective Hawkins was never asked during the suppression hearing whether the statement in his affidavit was a false statement, a knowing or intentional misrepresentation, a statement made in reckless disregard for truth, or a simple mistake. The only questioning concerning Officer Christensen's encounter with Boatright demonstrated that the detective merely put the information he received from the officer into the affidavit and he believed, or appropriately accepted, it to be accurate:

> Q. You state in the affidavit that Christensen observed the bag and saw what he believed to be, due to his training and experience, methamphetamine, period. And then Boatwright [sic] was issued his *Miranda* warnings at this time?
>
> A. Correct.
>
> Q. Is that what Officer Christensen told you?
>
> A. I would assume that's what I was told, yes.
>
> Q. Okay. Because you had no other knowledge, other than what was being provided to you?
>
> A. That is correct.

Moreover, Detective Hawkins's testimony also reflected that, contrary to knowingly making a false statement or one in disregard of the truth, he attempted to state correct information in his affidavit:

> Q. In the affidavits that were attached to the search warrant, did you make every effort to communicate to the judge as accurately as possible the information that you had that was the basis to believe there was probable cause to find the drugs in this location?
>
> A. Yes.

14

Although Detective Hawkins's statement concerning the timing of the *Miranda* warnings ultimately proved to be incorrect, the record reflects that this misstatement resulted from a misunderstanding or miscommunication between the officers, which amounts, at most, to mere negligence by Detective Hawkins. It does not indicate that Hawkins intentionally, knowingly, or with reckless disregard for the truth placed a false assertion in the affidavit. Innocent mistakes or even negligence are not sufficient to support a *Franks* claim. *See Franks*, 438 U.S. at 171; *Dancy*, 728 S.W.2d at 783.

Having reviewed the record and the applicable standards of review, we conclude that the trial court could have reasonably found that Detective Hawkins did not intentionally or knowingly make a false statement or one in reckless disregard for the truth in his search warrant affidavit. Accordingly, the trial court did not abuse its discretion by refusing to suppress the evidence based on error contained in the affidavit. We overrule appellant's second point of error.

## Parole Instruction

In his third point of error, appellant contends that he suffered egregious harm because the statutory parole instruction given in the punishment charge was based on the wrong statutory provision.

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd); *see Sakil v. State*, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009).

15

The trial court is required to give the jury a written charge setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14. The judge's duty to instruct the jury on the applicable law exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *see Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) ("The purpose of the jury charge is to inform the jury of the relevant law and guide them in applying that law.").

Section 4 of article 37.07 of the Texas Code of Criminal Procedure requires that the jury instructions in the punishment charge contain information on parole law. *See* Code Crim. Proc. art. 37.07, § 4; *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). In most cases, when a defendant is found guilty of a felony offense, and the jury assesses punishment, the trial court is statutorily mandated to include the prescribed parole and good-time instruction in its charge. *See* Code Crim. Proc. art. 37.07, § 4; *Stewart v. State*, 293 S.W.3d 853, 856 (Tex. App.—Texarkana 2009, pet. ref'd). This instruction explains generally the concepts of good-conduct time and parole, states the defendant's eligibility for parole in terms of calendar years or sentence portion, and states that no one can predict whether parole or good time might be applied to the defendant. *See* Code Crim. Proc. art. 37.07, § 4(a)–(c); *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). On appeal, the reviewing court presumes the jury followed these instructions as given. *Luquis*, 72 S.W.3d at 366.

16

The statute "specifically sets out three lengthy, alternative jury charges concerning the parole law; and those are to be chosen based on a very exacting and at least potentially confusing set of conditions." *Stewart*, 293 S.W.3d at 855 (citing Code Crim. Proc. art. 37.07, § 4(a)–(c)). "Depending on the offense of which a defendant has been convicted, whether his . . . sentence is to be enhanced, and whether a deadly-weapon finding has been made . . ., the trial court is to select which one of the three alternatives will be given to the jury." *Id.* at 855–56. If prior convictions have been alleged for enhancement of punishment as provided by section 12.42(d) of the Penal Code, the trial court is required to give the parole-eligibility instruction set forth in section 4(b). *See* Code Crim. Proc. art. 37.07, § 4(b). If the judgment contains an affirmative finding under section 3g(a)(2) of article 42.12 of the Code of Criminal Procedure,[7] the trial court is required to give the parole eligibility instruction set forth in section 4(a). *See id.* art. 37.07, § 4(a). Tracking the statutory language of article 37.07, section 4(b), the trial court's charge on punishment instructed the jury that:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years,

---

[7] Section 3g(a)(2) of article 42.12 limits the availability of community supervision

> to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

Tex. Code Crim. Proc. art. 42.12, § 3g(a)(2). A finding under this section is known as an affirmative deadly weapon finding.

whichever is less. Eligibility for parole does not guarantee that parole will be granted.

*See* Code Crim. Proc. art. 37.07, § 4(b).

Appellant argues that instead of the habitual-offender parole instruction provided in section 4(b), the charge should have contained the deadly-weapon-finding parole instruction provided in section 4(a). Appellant bases his argument on "the implied finding of a deadly weapon" resulting from his conviction for the offense of unlawful possession of a firearm by a felon. While it is true that a firearm is a deadly weapon per se, *see* Tex. Penal Code § 1.07(a)(17)(A), a deadly weapon finding is not authorized for an allegation of possession of a firearm. *See Mann v. State*, 58 S.W.3d 132, 133 (Tex. Crim. App. 2001) (Johnson, J., concurring) ("[S]ince the possession of a firearm is the gravamen of the offense, the mere possession cannot be used to [sic] both to charge the offense and to enhance the punishment."); *see also Rodriguez v. State*, 31 S.W.3d 772, 777 (Tex. App.—Austin 2000, no pet.).

An affirmative finding of a deadly weapon pursuant to section 3g(a)(2) of article 42.12 is based on a showing that the deadly weapon "was used or exhibited during the commission of a felony offense or during immediate flight therefrom." *See* Code Crim. Proc. art. 42.12, § 3g(a)(2). The "use" of a deadly weapon in the context of an affirmative deadly weapon finding includes simple possession *if such possession facilitates the associated felony*. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (emphasis added); *see Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995) ("[M]ere possession of [deadly] weapon without putting it to any use or purpose whatsoever does not [permit an affirmative deadly weapon finding]."). "[I]n order to

18

'use' a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve an intended result, namely, the commission of a felony offense separate and distinct from 'mere' possession." *Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992); *see Ex parte Petty*, 833 S.W.2d 145 (Tex. Crim. App. 1992), *abrogated on other grounds by Ex parte Nelson*, 137 S.W.3d 666 (Tex. Crim. App. 2004). "[A] deadly-weapon finding for a felony offense must contain some facilitation connection between the weapon and the felony. The deadly weapon must, in some manner, help facilitate the commission of the felony." *Plummer v. State*, No. PD-1269-12, 2013 WL 5538883, at *6 (Tex. Crim. App. Oct. 9, 2013).

Such is not the case here. While appellant was convicted of possessing a controlled substance in addition to unlawfully possessing a firearm as a felon, there was no showing that he "used or exhibited" the firearms found in his bedroom to facilitate his drug possession.[8] *Compare Patterson*, 769 S.W.2d at 941 (determining that deadly weapon had been "used" during defendant's possession of methamphetamine to protect drugs), *with Ex parte Petty*, 833 S.W.2d at 145 (concluding that affirmative deadly weapon finding was erroneous "because there was no associated felony facilitated by the [defendant's] possession of the deadly weapon"). "[T]he mere possession of a deadly weapon during a felony offense is not covered by the statute." *Plummer*, 2013 WL 5538883, at *6. Here, the evidence demonstrated that appellant merely possessed the rifles at the same time he possessed the methamphetamine. *See, e.g.*, *id.* ("Appellant's mini-Glock was simply being possessed at the same time he possessed the body armor."). Based on the evidence at

---

[8] The record reflects that the deadly weapon allegation contained in the indictment was explicitly abandoned by the State before trial.

19

trial, an affirmative deadly weapon finding was not authorized in this case. Nor was there an implied deadly weapon finding in the jury's verdict of guilty for unlawful possession of a firearm by a felon. Therefore, contrary to appellant's contention, section 4(a) was not applicable. The trial court did not submit the wrong statutory parole instruction.

We conclude that the parole-eligibility instruction given by the trial court was not erroneous. Accordingly, we overrule appellant's third point of error.[9]

## Exclusion of Defense Witness

In his fourth point of error, appellant asserts that the trial court abused its discretion when it disqualified Mark Boatright as a defense witness based on a violation of the witness-sequestration rule. Specifically, appellant maintains that, pursuant to the test laid out by the court of criminal appeals in *Webb v. State*, the trial court abused its discretion because no particular circumstances existed to justify exclusion of a witness crucial to his case. *See Webb v. State*, 766 S.W.2d 236, 244–45 (Tex. Crim. App. 1989).

Texas Rule of Evidence 614, commonly referred to as "the Rule," codifies the witness-sequestration rule. When invoked by either party or the trial court, the Rule mandates, with some exceptions not applicable here, the exclusion of witnesses from the courtroom during trial so they cannot hear the testimony of other witnesses. Tex. R. Evid. 614. The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Routier v. State*, 112 S.W.3d 554, 591 (Tex. Crim. App. 2003) (citing *Webb*, 766 S.W.2d

---

[9] Because we find no error in the jury charge, we need not conduct a harm analysis. *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

at 239); *see Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005) ("The purpose of placing witnesses under the [R]ule is to prevent the testimony of one witness from influencing the testimony of another, consciously or not."); *Harris v. State*, 122 S.W.3d 871, 882 (Tex. App.—Fort Worth 2003, pet. ref'd) ("The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of witnesses."). When the Rule is invoked, a witness should not hear testimony in the case or talk to any other person about the case without the court's permission. *Harris*, 122 S.W.3d at 882; *see* Tex. Code Crim. Proc. arts. 36.05 (witnesses under Rule are not allowed to hear any testimony in case), 36.06 (trial court required to instruct witnesses under Rule not to converse with each other or with any other person about case).

When the Rule is violated, the trial court may, taking into consideration all of the circumstances, allow the testimony of the potential witness, exclude the testimony, or hold the violator in contempt. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996); *Jimenez v. State*, 307 S.W.3d 325, 334–35 (Tex. App.—San Antonio 2009, pet. ref'd); *Harris*, 122 S.W.3d at 882. When deciding whether to disqualify a defense witness for violating the Rule, a trial court must balance the interests of the parties, including the defendant's constitutional right to call witnesses in his own behalf, consider alternative sanctions, and weigh the benefit and detriment arising from a disqualification in light of the nature and weight of the testimony to be offered. *Routier*, 112 S.W.3d at 590 (citing *Webb*, 766 S.W.2d at 244); *Emenhiser v. State*, 196 S.W.3d 915, 923 (Tex. App.—Fort Worth 2006, pet. ref'd).

When reviewing a trial court's decision to exclude a defense witness for violation of the Rule, an appellate court must decide (1) if there were particular circumstances, other than the

21

mere fact of the violation, that tend to show that the defendant or his counsel consented, procured, or otherwise had knowledge of the violation; and (2) if no particular circumstances existed to justify disqualification of the witness, if the excluded testimony was crucial to the defense.[10]  *Webb*, 766 S.W.2d at 245.  A witness's testimony generally cannot be excluded solely on the grounds that he violated the Rule, "although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court."  *Id.* at 241 (quoting *Holder v. United States*, 150 U.S. 91, 92 (1893)).  We review the trial court's decision on whether to exclude a witness who has violated the Rule for an abuse of discretion.  *Webb*, 766 S.W.2d at 240, 244–245; *Mitchell v. State*, 238 S.W.3d 405, 412 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

The record reflects that the Rule was invoked at the beginning of appellant's trial. Witnesses Mark Boatright and Sheree White-Sponsler were both sworn in and the court admonished them that they could not converse with anyone about the case, except the attorneys involved.  Both acknowledged the court's instruction and indicated that they understood the Rule.

---

[10]  In *Webb*, the court of criminal appeals formally adopted a test to apply when a witness was prohibited by the trial court from testifying because the witness was present in the courtroom during the trial.  *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989); *see Routier v. State*, 112 S.W.3d 554, 590–91 (Tex. Crim. App. 2003).  The Rule violation in the instant case involved two witnesses, placed under the Rule, conversing about the trial and trial testimony in direct violation of the trial court's instructions, as distinguished from the more common incident of a witness's unauthorized presence in the courtroom during trial.  For our review we assume, without deciding, that the two-part *Webb* analysis applies to violations of the Rule other than a witness's unauthorized presence in the courtroom during trial.  *See Jimenez v. State*, 307 S.W.3d 325, 334–35 (Tex. App.—San Antonio 2009, pet. ref'd) (applying *Webb* analysis when witness was recorded speaking with defendant outside of court after invocation of Rule); *Brumbelow v. State*, 10 S.W.3d 685, 688 (Tex. App.—Tyler 1994, pet. ref'd) (applying *Webb* analysis when violations were long-distance telephone conversations between defense witnesses after Rule had been invoked).

At trial, White-Sponsler was the first witness for the defense. Her direct examination concluded just before the lunch break on the second day of trial. After lunch, one of the jurors informed the trial court that he had observed several witnesses eating lunch at a local restaurant, and overheard them discussing the case. The judge interviewed the juror in chambers, outside the presence of the parties but on the record. The juror identified the three individuals he saw at the table as (1) "the witness who just finished testifying" (White-Sponsler); (2) "one of the ones that had been sworn in but ha[d] not testified yet" (Boatright), and (3) "the older lady . . . that is in the audience, in the gallery" (June Piotrowicz, White-Sponsler's grandmother). The juror detailed the specifics of what he overheard—essentially indicating that they discussed portions of White-Sponsler's trial testimony—but assured the court that he could remain fair and impartial because "[i]t wasn't anything [he] hadn't already heard" in her testimony.

The trial court then conducted a hearing in the courtroom during which Piotrowicz, Boatright, and White-Sponsler testified. The three confirmed that they had lunch together, but each initially denied discussing the case. However, while Piotrowicz testified that she could not remember what was discussed and did not think they discussed anything having to do with the trial, she indicated that White-Sponsler "might have" said something about her testimony. When questioned by the court about the specific details the juror had overheard, Piotrowicz did remember her granddaughter speaking about those topics at lunch and remembered that White-Sponsler had testified about those topics in her testimony. Boatright also denied that the three discussed the trial during lunch, but when asked about specific information indicated that White-Sponsler may have made certain comments but he did not know if that was her testimony. When the trial court gave

23

Boatright "one more chance" to consider his answers, he stated, "As far as I know, we didn't talk about anything pertinent I already didn't know or she didn't already know." When the trial court asked follow-up questions to that statement, Boatright again indicated he did not remember what they talked about. The hearing concluded with White-Sponsler. She also initially denied that she discussed her trial testimony at lunch. However, she admitted that she told Boatright that appellant had grimaced when Boatright's name was mentioned. When asked about the specific topics the juror overheard, she admitted that she did discuss them but "didn't think it was a concern as far as the case was concerned" even though she acknowledged it was part of her testimony in court.

After the hearing, the trial resumed with the cross-examination of White-Sponsler. In response to the prosecutor's questions, she admitted that she violated the Rule by discussing what she had testified about during lunch, though she asserted it was not done intentionally. Later, when appellant attempted to call Boatright as a witness, the State objected based on the Rule violation. Finding that Boatright had violated the Rule, the trial court sustained the State's objection. Appellant then made an offer of proof of Boatright's testimony. In his testimony, Boatright confirmed that he was stopped for a traffic violation on the night in question after leaving appellant's house. He agreed that he gave the police officer consent to search his person and methamphetamine was found on his person. He indicated that he had no independent recollection of that day and did not recall telling police that he purchased the methamphetamine from appellant. He testified that he and appellant were in business together as Cedar Park Cycle Salvage, though he subsequently admitted on cross-examination that the business, which was started in October 2008, only lasted about six months and then "petered out." He testified that as a business partner he had a key to

24

appellant's workshop, but said he did not have access to the bedroom behind the workshop or the sink in the bedroom. Boatright admitted that his memory of the night was "kind of fuzzy" because he had been using drugs and drinking alcohol, but stated that, notwithstanding his answers to the officer depicted on the video of the traffic stop, he did not get the methamphetamine from appellant or his workshop. At the conclusion of Boatright's testimony, appellant asked the court to reconsider its ruling and allow Boatright to testify. The court did not change its ruling and did not permit Boatright to testify.

Both Boatright and White-Sponsler were aware of their obligations under the Rule as evidenced by their responses when the trial court admonished them as well as their testimony during the hearing on the violation. Despite knowing that the Rule precluded them from speaking about the trial, however, they discussed it anyway. Boatright clearly violated the trial court's order pertaining to the Rule by speaking with White-Sponsler about the trial and her testimony, and the violation appears to have been perpetrated knowingly. However, the record does not indicate that appellant or his trial counsel "consented to, procured, or otherwise had knowledge of" the lunch conversation between Boatright, White-Sponsler, and Piotrowicz. Insofar as the record reflects, the trial court disqualified Boatright based solely on the fact that the Rule was violated. Therefore, we must decide whether the excluded testimony was crucial to appellant's defense.

Appellant argues that Boatright's testimony was crucial because it negated the basis for the search warrant and refuted the State's theory that appellant was selling methamphetamine out of his workshop. However, according to appellant's offer of proof, the majority of his testimony would have pertained to the fact that he did not recall the events of that night, including telling the

25

police that he bought the methamphetamine found on his person from appellant. His subsequent recantation about getting the drugs from appellant does not negate the basis for the search warrant—which included his statement that he got the drugs from appellant—at the time the warrant was obtained. Boatright's testimony was not that he did not tell the officer that he bought the methamphetamine from appellant, but rather that he did not *remember* doing so. The video of the traffic stop clearly reflects that Boatright told the officer that he got the drugs from appellant, even if he later did not recall making that statement. Also, appellant was not charged with delivery of a controlled substance; thus, Boatright's recantation about where he got the methamphetamine was not crucial to appellant's defense against possessing the methamphetamine discovered in his bedroom. Furthermore, appellant's defense at trial was that others, particularly Boatright, as appellant's business partner, had access to the workshop. Several other witnesses, including White-Sponsler and Evelyn Sponsler, appellant's mother, testified that Boatright was appellant's business partner and had a key to the workshop. However, Boatright's testimony was that although he had a key to the workshop, he had no access to appellant's bedroom or the sink where the drugs were found.

For a defendant to prevail on the second *Webb* prong, he must show that the evidence "was 'extraordinary' in the sense that it was crucial to his defense." *Routier*, 112 S.W.3d at 590–91 (quoting *Webb*, 766 S.W.2d at 245). Here, Boatright's testimony as reflected in the offer of proof was not highly probative of the question of appellant's guilt of possessing the methamphetamine found in his bedroom; thus, we cannot say that the testimony Boatright would have provided was extraordinary in the sense that it was crucial to appellant's defense. We hold that the trial court did

26

not abuse its discretion in excluding Boatright's testimony. Accordingly, we overrule appellant's fourth point of error.

**Clerical Error in Judgments**

Finally, we observe that each of the judgments of conviction contains clerical errors. First, the judgments erroneously state that the "Charged Punishment Range" for each offense is "First Degree Felony." However, the punishment range for possession of a controlled substance as charged in the indictment in this case, absent the habitual-offender enhancement,[11] is that of a second degree felony. *See* Tex. Health & Safety Code § 481.115(a), (d). The punishment range for unlawful possession of a firearm by a felon as charged in the indictment, absent the habitual-offender enhancement, is that of a third degree felony. *See* Tex. Penal Code § 46.04(a)(1). Second, both judgments state that appellant pleaded "Not True" to the enhancement paragraphs of the indictment. The record, however, reflects that appellant pleaded "True" to these paragraphs at the beginning of the punishment phase of trial.

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 46.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Since the necessary information is available here, we modify the judgment of conviction for possession of a controlled substance to reflect that the "Charged Punishment Range" is "Second Degree Felony" and to reflect that appellant pleaded "True" to the enhancement paragraphs. We modify the judgment of conviction for unlawful possession of a firearm by a felon

---

[11] In the next line, both judgments correctly reflect that the "Enhanced Punishment Range" is "Habitual Offender 25–99 Years of Life in Prison."

to reflect that the "Charged Punishment Range" is "Third Degree Felony" and to reflect that appellant pleaded "True" to the enhancement paragraphs.

## CONCLUSION

Finding no abuse of discretion in the denial of appellant's motions to suppress, no error in the jury charge on punishment, and no abuse of discretion in the exclusion of Boatright's testimony, we modify the judgments of conviction as noted above and affirm the judgments as modified.

_____
J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Modified and, as Modified, Affirmed

Filed:   November 8, 2013

Do Not Publish